Billy L. and Marian E. Poe v. Commissioner.
Poe v. Commissioner
Docket No. 3996-65.
United States Tax Court
T.C. Memo 1966-275; 1966 Tax Ct. Memo LEXIS 6; 25 T.C.M. (CCH) 1431; T.C.M. (RIA) 66275; December 28, 1966
*6 Billy L. Poe, pro se, 603 Adams Ave., Alamogordo, N. Mex. Morley H. White, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1958 and 1959 in the amounts of $148.50 and $677.95, respectively. The issue for decision is whether amounts designated "per diem," paid to one of petitioners by his employer during the years 1958 and 1959, are includable in petitioners' gross income, and if so whether all or any portion of these amounts is deductible by petitioners as travel expenses. Findings of Fact Some of the facts have been stipulated and these facts are found in accordance with the stipulation to the same extent as if fully set forth herein, but only those facts necessary to an understanding of the issue will be repeated hereinafter. Billy L. Poe (hereinafter referred to as petitioner) and Marian E. Poe, husband and wife now residing at Lancaster, California, filed joint Federal income tax returns for the calendar years 1958 and 1959 with the district director of internal revenue at St. Louis, Missouri. Petitioner was graduated from Emory and Henry *7 College in June 1950 with a B.S. degree. He served as a pilot in the United States Air Force prior to September 1955, when he entered Virginia Polytechnic Institute to study engineering. He received a B.S. degree in engineering in June 1958. Prior to his graduation, a representative of McDonnell Aircraft Corporation (hereinafter referred to as McDonnell) interviewed him with respect to accepting a position with McDonnell. Petitioner filed an application for such a position, showing as his permanent address, Marion, Virginia, and was employed by McDonnell. Around the first of July 1958, petitioner began working for McDonnell in St. Louis, Missouri and for the first month or six weeks was in the structural design group of that company. After this period of time he was offered a position in the flight test engineering group for which he was particularly qualified because of his experience as an Air Force pilot. Upon employing petitioner, McDonnell had authorized moving expenses for him from his then residence in Marion, Virginia. Shortly after petitioner arrived in St. Louis, he and his wife rented an apartment in University City, Missouri, in which they resided from July 7, 1958, until *8 approximately September 30, 1958. Shortly before September 30, 1958, petitioner was issued a travel and relocation authority by McDonnell covering the 9-month period from September 30, 1958, to June 30, 1959, assigning him to Holloman Air Force Base (hereinafter referred to as Holloman), Alamogordo, New Mexico, in connection with the F-101B Joint Test Program. The travel and relocation authority was in accordance with regulations which McDonnell had in existence governing travel of its employees, which regulations had been approved by representatives of the United States Government. McDonnell had contracts with the United States Government which provided that it would be reimbursed for amounts expended for travel and subsistence of its employees in accordance with approved regulations. The regulation under which petitioner was assigned to Holloman was designated as Control Procedure 20.103 "TRAVEL - Special Field Assignment: Temporary relocation for assignments of a special nature." Under McDonnell's regulations in connection with this control procedure, no employee might be originally assigned to a single location for a period in excess of 9 months but extensions of assignments *9 beyond a 9-month period were provided for by the same regulation. There was also a provision in this regulation for authorizing an employee to take his dependents with him on assignments. Upon vacating his apartment in St. Louis, petitioner stored most of his furniture and took with him to Holloman only those items which he could carry in an auto trailer which he was authorized to use in traveling to Holloman, such as clothing for himself and his wife, personal effects, a television set, and similar items. At the time petitioner was assigned to Holloman in connection with the F-101 program, he saw a schedule which someone in McDonnell had prepared with respect to the F-101 program which showed a projected date for completion of the F-101 test program at around June 30, 1959. On November 5, 1959, petitioner's original 9-month assignment was extended to March 6, 1960. On December 7, 1959, petitioner returned from Holloman to St. Louis, Missouri. He had been at Holloman continuously since approximately October 1, 1958, when he was first assigned to that location. In accordance with McDonnell's regulations, during the years 1958 and 1959 petitioner received a per diem allowance *10 while at Holloman of $10 a day. He received a total amount of such allowance in 1958 of $720 and in 1959 of $3,250. Petitioners did not include the amounts of these per diem allowances in their taxable income and respondent increased petitioners' gross income as reported in each of the years 1958 and 1959 by the amount of these per diem allowances. Opinion The facts in the instant case very closely resemble those in , affirmed (C.A. 8, 1963). Petitioner was assigned to the same program as was the taxpayer in Leo C. Cockrell. Petitioner was assigned in accordance with the same regulations and was paid the "per diem" allowance at the same rate as was the taxpayer in Leo C. Cockrell. Petitioner in the instant case stored his furniture in St. Louis when he left for Holloman. The facts in the Leo C. Cockrell case do not disclose whether the taxpayer there involved stored any furniture when he left St. Louis for Holloman. Petitioner's testimony as to his knowledge of the assignments of McDonnell's employees to Holloman and other locations at which McDonnell was carrying on programs under Government contracts *11 being extended beyond the initial 9-month period was equivocal. Petitioner, after being unresponsive to certain questions in this regard, testified with respect to such extensions, "I might have suspicioned something like this, but as far as a fact, I knew that I would be extended only when I saw the orders." When this testimony is considered in conjunction with the fact that petitioner's assignment to Holloman originally was from September 30, 1958 to June 30, 1959, but he remained at Holloman until December 7, 1959, and insofar as the record shows, did not receive an extension order until November 5, 1959, it appears that petitioner must have known of his extension prior to receiving the order. At the time petitioner was assigned to Holloman, McDonnell's travel regulations permitted employees to be extended past the original 9 months of their assignment. We do not believe that a man of the intelligence of this petitioner did not know that in all likelihood he would remain at Holloman until the conclusion of the project at that location with respect to the F-101 and did not realize that a schedule showing a target date for completion of the F-101 program was no assurance that the *12 program would be completed by that date. In , we stated at page 480: Petitioner testified that at the time of his original assignment to Holloman he did not know that it could extend past the 9-month period. Little weight can be given to this testimony in view of the familiarity petitioner expressed with control procedure 20.103 in effect at the time of his assignment, which control procedure specifically provided for extensions of such assignment for additional 9-month periods. * * * The taxpayer in , was assigned to Holloman in May of 1956. Petitioner in the instant case was not assigned to Holloman until September 30, 1958. We would be naive, indeed, to believe that a man with the education and experience of petitioner did not thoroughly understand all the implications with respect to the length of time of his assignment to Holloman. Petitioner's studied attempt not to admit that he understood that his assignment to Holloman in connection with the F-101 project was indefinite and would continue as long as his services were needed at Holloman by McDonnell caused most of his testimony to be confusing and of *13 little value. Since we see no substantive distinction in the instant case and , we hold for the reasons stated in the Cockrell case that the per diem allowances received by petitioner from McDonnell in 1958 and 1959 are includable in his taxable income and are not deductible as travel expenses while away from home. Petitioner's assignment to Holloman was for an indefinite period and therefore his home within the meaning of the law allowing deductions for travel expenses was at Holloman from the date of his assignment there until his return to St. Louis, Missouri in December 1959. Decision will be entered for respondent.